**TEMPLE HILL DEVELOPMENT CO. v. LINDHOLM et al. (No. 6232.)**

(Court of Civil Appeals of Texas. San Antonio. Oct. 26, 1921.)

**Judgment ⚖256(2)—Sustained by findings.**

In an action by purchaser of lots against vendor to restrain defendant from interfering with the possession of the land, 'judgment for plaintiffs *held* sustained by the findings.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by the Temple Hill Development Company against Eric Lindholm and wife. There was a decree for defendants, and plaintiff appealed to the Court of Civil Appeals, which affirmed the judgment (212 S. W. 984), and plaintiff further proceeded in error to the Supreme Court (231 S. W. 321), which reversed and remanded the case to the Court of Civil Appeal to pass upon the sufficiency of the facts. Judgment of trial court affirmed. .

W. C. Church and T. F. Mangum, both of San Antonio, for appellant.

Barrett, Eskridge & Barrett, of San Antonio, .and Hood Boone, of Pharr, for appellees.

COBBS, J. This case was affirmed by this court on June 6, 1919. See 212 S. W. 984. It was reversed and remanded by the Commission of Appeals on June 1, 1921. See 231 S. W. 321.

The judgment of this court was predicated upon the consideration of what seemed to us a full and complete finding of facts and conclusions of law, made and filed by the trial judge, which, upon an examination of the very full facts set out in the briefs of both parties under the several statements, convinced us it supported the judgment, without the necessity of considering, under the circumstances, the statement of facts, as neither party challenged the truth or accuracy of a stated fact set out by his adversary.

This case is returned to us with direction to "pass upon the sufficiency of the facts to support the judgment," meaning for us to determine the sufficiency thereof as presented by the statement of facts. This case now stands on this submission as it originally stood. There are no additional briefs filed by either party, only the briefs that were here originally, which went with the record to the Supreme Court and were returned here. This court considered and passed upon each and every assignment of error as held in Hess & Skinner Engineering Co. v. Turney, 109 Tex. 208, 203 S. W. 593, should be done, but not upon the statement of facts.

The contract authorized appellee to use the building for a residence the place occupied by them, until a residence should be built on the lots, and not to use it for residence purposes after the residence should be built. The appellees moved from the shed to the new building.

The statement of facts shows that appellees went into possession of the property with the full knowledge of appellant, and

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

made valuable improvements amounting to $1,500 thereon.

We have now especially considered the facts set out in the separate and independent statement of facts filed in the case. Upon the whole there does not seem to be any very great and material difference between those contained in the separate briefs of both parties when considered together and harmonized, which we regarded then, as now, faithfuly made, which caused us 'to reach the conclusion that they supported the findings of the trial judge. The attorneys file no additional briefs attacking directly and specifically any finding by the court as erroneously made and what independent material fact relied upon, not found or not supported by some evidence. We are therefore compelled to take the record as it was originally made.

The first assignment is not an accurate statement of the facts. The contract upon which the suit is brought does not contain any stipulation that the new residence should be constructed in six months. The contract substantially provided that the building which was already there could be used for a residence until the certain residence to be built on said lots was ready, and afterwards could not be used as a residence. It was agreed that appellee be permitted to reside on said property for a period of six months, and obligated themselves to then vacate unless other written consent was given to remain longer. It was agreed therein the pending suit should be held up for six months to await the compliance with said contract, which if done the suit would be dismissed, otherwise the suit was to be prosecuted.

At the time this new agreement was made, they were living in a little shack, where they were permitted to live for six months. The building they were living in at the time of trial just had the framework up, outside walls and the framework; the floor in the kitchen was in, but the furniture and "stuff" had not been moved in. The shed faces north, faces the street, and the building the same way.

The court found all the terms of the contract had been substantially complied with, and the proof sustains him. Appellees attempted in good faith to perform the terms of the contract, which at the trial of the case had been substantially complied with. They went into possession with the knowledge and consent of the appellant, and made improvements in good faith amounting to $1,500. Appellants induced and persuaded appellees to change their location and buy the present lots.

Mrs. Lindholm testified:

"Mr. Ludovick was bothering us; he came and got us and picked out the lots for us himself; we had two lots picked out before. And that morning I was up there to see the lots, I didn't think I would have the lots unless I could have a cow and my chickens, and he said it was too hard to get the water, it cost too much, so he took us down and picked out two lots. When we bought the lots our intention was to build a little home for ourselves; we are two old people, and if we get the lots paid for we shall build a house; that was our intention. But he said, 'It is so nice here and there is no restriction,' he said to me, 'and the inspector coming around'—that is what he said, and I can swear that 10 times. We signed a contract that we shall have a cesspool and toilet put in, and them things put in and the porch screened, and that I thought was enough, then we could live there.''

The proof showed that three coats of paint were placed on the building, except inside, one coat on the gallery and three on the outside. The building was screened, and windows placed therein. The electric lights were not then placed, because of the conditions of existing war. Cesspool and toilet were constructed in a sanitary manner, and the plumbing was all in, ready for the completion of the lavatory, when he "can get the stuff," and further said:

"I brought the lumber with me when I came here, the lumber that I built the house with— I had a carload of it—and I have done the building almost exclusively myself, I have done the work, all the work myself; I am a carpenter. I am working for the government; I have been working for the government over in Brooks Field, and I am now at Camp Travis —up at the Remount now, transferred up to the Remount. I build my home just as I could and just as I had leisure time.''

There are other houses built there, not as nice as that of appellees, allowed and permitted in the same plat, under similar covenants in the deeds. And further said:

"I have in good faith tried to live up to the terms of the contract that has been read to the court. I had paid $10 on two lots further up on the hill, but when I came to take them he refused to sell them to me, that is, Mr. Ludovick, he took me down and sold me the lots on South Presa street, and he says, 'These lots are better than what you have up there; it costs too much to get the water up there,' he says. I have arranged to do irrigating on this lot; I have put in two meters, one for each lot, and I have piped the lots from the back up to the front for irrigation so I could get some garden; every little helps. * * * I told Mr. Ludovick, when I bought these lots that I was going to build a home there; I have tried to do it too. Yes; this building that I put up is on the back end of the lot. My idea in putting it on the back end of the lot was so I could have a little place for myself to live in till I was in circumstances to put up a better one. That is not built for a permanent residence; it was supposed to be a place where I could live in till I could get the lots paid for. Yes; when I signed this contract I intended to build another place on the front of the lot, a better place, as soon as I could get in circum-

stances to do so. No; I never said in that contract that I was going to do it in six months. The kitchen had a floor in 'it when this contract was signed; I wasn't cooking in the kitchen; we hadn't moved in yet. No, sir; I didn't have anything moved in at all. I can't say really how long afterwards it was when we moved in, I can't recollect, I can't state any date."

An examination of this contract shows many onerous conditions. The appellee has complied substantially with many of them. They paid on the purchase price and interest, which was received until the refusal, whereupon appellee tendered the acknowledged remaining amount, which appellant declined to receive. In the original briefs and arguments the same points were made, and all the testimony relied upon was set out in the briefs of both parties to support or overturn the court's findings. We examined and considered all the assignments raised in the motion for rehearing and the testimony embraced in the statements of the briefs, and overruled the motion without a written opinion. An examination now of the entire record, all the briefs, the testimony set out therein, the court's findings and the entire statement of facts shows that the evidence supports the findings and judgment of the trial court.

As there is no substantial error assigned that requires a reversal, the judgment is affirmed.